UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KELLY ROSELLEN L., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C19-6036-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in evaluating the opinions of a medical expert and an examining physician. (Dkt. # 11.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.   BACKGROUND

Plaintiff was born in 1977, has a high school education with some college education, and has worked as a bartender, cashier, secretary, and server. AR at 49, 303.

In October 2015, Plaintiff protectively filed applications for benefits, alleging disability as of August 1, 2008. AR at 258, 261. Plaintiff's applications were denied initially and on

ORDER - 1

reconsideration, and Plaintiff requested a hearing. *Id.* at 136, 143, 153. The ALJ conducted hearings on February 21, 2018 and July 5, 2018 and issued a decision finding Plaintiff not disabled. *Id.* at 15-29, 37-55, 56-73.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since August 1, 2008, the alleged onset date.

Step two: Plaintiff has the following severe impairments: fibromyalgia, hypotension, syncope, dizziness, ulnar neuropathy, posttraumatic stress disorder ("PTSD"), depression, anxiety, and obsessive-compulsive disorder ("OCD") (20 CFR §§ 404.1520(c) and 416.920 (c)).

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following limitations: Plaintiff cannot climb ladders, ropes, or scaffolds. She cannot be exposed to unprotected heights or hazards and heavy, mobbing machinery. Plaintiff must avoid extremes of heat and cold. She can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She can perform entry-level work with no more than occasional interaction with the public, coworkers, and supervisors.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-29.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

ORDER - 2

### III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV. DISCUSSION

**A.   The ALJ Did Not Err in Evaluating the Medical Opinion Evidence**

*1.   Legal Standards*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

ORDER - 3

747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas*, 278 F.3d at 957; *Orn*, 495 F.3d at 632-33.

ORDER - 4

*1.     Dr. Gilberto Munoz, MD, MPH and Pamela Hsu, MD*

Dr. Munoz reviewed Plaintiff's medical record and testified as a medical expert at the first administrative hearing. AR at 41-48. Dr. Munoz opined Plaintiff has a history of syncope, hypotension, irritable bowel syndrome, migraine headaches, and positional orthotic tachycardia syndrome ("POTS"). *Id.* at 42-43. Based on the physical impairments in the record, Dr. Munoz opined Plaintiff would be restricted to sedentary work. *Id.* at 44. He also opined Plaintiff could not work at unprotected heights or work around machinery and could not work in an environment with industrial noise levels. *Id.* at 44-45. Dr. Munoz further opined Plaintiff could not climb ladders or scaffolds and the rest of the postural activities would be occasional. *Id.* at 44. When asked by Plaintiff's attorney, Dr. Munoz acknowledged Plaintiff would also qualify for a fibromyalgia diagnosis but stated that diagnosis would not change his opinion. *Id.* at 46.

The ALJ gave Dr. Munoz's assessment that Plaintiff would be restricted to a sedentary exertional level little weight. AR at 24. The ALJ found this limitation was inconsistent with the overall medical evidence, including normal detailed cardiac and neurological testing with no explanation for Plaintiff's symptomatology, and that various doctors have suggested a possible significant psychological overlay and/or a possible somatic component to Plaintiff's complaints. *Id.* at 24-25. The ALJ also found Dr. Munoz's opinion was not in accord with Plaintiff's improvement in syncope symptoms with vitamin B12 shots, improvement in muscle spasms with valium, and that Plaintiff's blood pressure responded to IV fluids. *Id.* at 25. However, the ALJ assigned Dr. Munoz's assessment of the postural and environmental restrictions great weight. *Id.* at 24.

Dr. Hsu, Plaintiff's treating physician, submitted a letter on September 21, 2017 on Plaintiff's behalf. AR at 2576. Dr. Hsu stated Plaintiff was followed for chronic chest pain,

1  syncope, and hypertension. *Id.* Dr. Hsu also stated Plaintiff was taking medication for her

2  markedly symptomatic hypotension, however, she still had recurrent symptoms. *Id.* Dr. Hsu

3  stated Plaintiff's hypotension results in chronic chest pain, near syncope, and syncope. *Id.* Dr.

4  Hsu also represented Plaintiff has been advised not to drive. *Id.* Lastly, Dr. Hsu opined that due

5  to recurrent syncope and near syncope, Plaintiff has been unable to work. *Id.*

6       Dr. Hsu also completed a questionnaire provided by Plaintiff's attorney in February 2018

7  regarding Plaintiff's impairments. AR at 4218-220. Dr. Hsu reiterated that Plaintiff suffered from

8  hypertension, syncope, and chest pain. *Id.* at 4218. Dr. Hsu opined Plaintiff suffered from her

9  symptoms multiple times a day, used a walker, and that her mental status may change depending

10 on blood pressure. *Id.* at 4219. Mr. Hsu also opined Plaintiff would miss 16 hours or more a

11 month from even a simple, routine sedentary job due to her impairments. *Id.* at 4220.

12      The ALJ gave Dr. Hsu's opinions little weight. AR at 25. Similar to the ALJ's

13 discounting of Dr. Munoz's opinion, the ALJ found Dr. Hsu's opinion was not in accord with

14 Plaintiff's normal detailed cardiac and neurological testing with no explanation for Plaintiff's

15 symptomatology, doctors' suggestions that there is a possible significant psychological overlay

16 and/or a possible somatic component to Plaintiff's complaints, and improvement in her

17 symptoms as listed above with regard to Dr. Munoz's opinion. *Id.*

18      Plaintiff argues the ALJ erred in evaluating Drs. Munoz and Hsu's opinions for several

19 reasons. First, Plaintiff argues that regardless of whether Plaintiff's providers were able to

20 determine the cause of Plaintiff's symptoms, she still experienced the symptoms. (Dkt. # 11 at

21 5.) Plaintiff also asserts she was diagnosed as Autonomic Hypersensitivity and suggests this may

22 have been the cause of her symptoms throughout the record. (*Id.* (citing AR at 23, 3999).)

23

ORDER - 6

Plaintiff argues that even if her symptoms are caused by an overlay of mental health issues, the ALJ is still required to consider the effect of her impairments. (*Id.*)

Plaintiff further argues the ALJ erred in finding her symptoms improved. Specifically, Plaintiff argues that she has experienced symptoms since her alleged onset date in 2008, and therefore any improvement identified by the ALJ in 2015 and later are irrelevant to the symptoms she suffered previously. (Dkt. # 11 at 6.) Plaintiff also asserts that she saw a provider multiple times in 2015 with symptoms of her impairments. (*Id.* (citing AR at 778, 814, 820, 843).) Further, Plaintiff asserts that even if she did have some improvements, her symptoms ultimately returned or continued. (*Id.*)

The Commissioner argues substantial evidence supports the ALJ's assessment of the medical record, and asserts Plaintiff is merely requesting the Court find a different interpretation of the evidence. (Dkt. # 12 at 7.) The Commissioner cites to the ALJ's detailed discussion of the medical evidence within the decision regarding records showing normal findings and improvement, including other medical opinions assessed by the ALJ that support the ALJ's findings. (*Id.* at 4-7.)

2.   *Inconsistencies with the Medical Record*

The Court finds the ALJ provided specific and legitimate reasons for discounting Drs. Munoz and Hsu's opinions. First, inconsistencies with the medical evidence may serve as specific, legitimate reasons for discounting limitations assessed by a physician. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the Social Security Administration] will give to that medical opinion.").

The opinions at issue were rendered by medical sources considering and treating Plaintiff's physical conditions. The ALJ could reasonably find the opinions were inconsistent

ORDER - 7

with the record due to the lack of objective testing to support the opined limitations and the suggestion in the record that Plaintiff's symptoms are caused by psychological or somatic components, rather than physical conditions. Although Plaintiff asserts the ALJ failed to provide specific examples of inconsistencies (dkt. # at 2), the ALJ provided a detailed summary of the medical record with his interpretation of the evidence earlier in the decision before addressing the medical source opinions. For example, the ALJ cited a 2013 stress echocardiogram that was normal (AR at 21 (citing *id.* at 988)), a 2015 myocardial perfusion imaging that was normal and a finding that Plaintiff's left ventricle size and systolic function were normal (*id.* (citing *id.* at 1037)), and a finding in 2015 that her ECG, troponin, and x-ray were normal despite a recent emergency room visit claiming chest pain, although she did report intermittent chest pain that had recently become more acute in the previous days before that visit. (*id.* (citing *id.* at 740-41)).

The ALJ also cited neurology notes from an examining medical source that were essentially normal except for mild changes in pinprick in the distal foot and found, *inter alia*, no significant muscle atrophy, a mildly unsteady gait but the ability to walk toes to heel, and no significant muscle atrophy. AR 21-22 (citing *id.* at 724). The ALJ further discussed that although Plaintiff is diagnosed with ulnar neuropathy, the medical evidence shows inconsistent complaints of that diagnosis. *Id.* at 23. The ALJ cited records from February 2013 showing her diagnosis was treated with NSAIDS. *Id.* (citing *id.* at 577). The ALJ also cited EMG studies from February 2015 revealing possible mild left ulnar neuropathy across her elbow with no electrodiagnostic evidence generalized peripheral neuropathy, myopathy, lumbar radiculopathy, left cervical radiculopathy or motor neuron disease. *Id.* (citing *id.* at 1401).

Reading the ALJ's decision as a whole, the ALJ cited to evidence in the record showing Plaintiff had normal detailed cardiac and neurological tests. Although Plaintiff may have still

experienced symptoms, the ALJ could reasonably find the severity of limitations opined by Drs. Munoz and Hsu regarding Plaintiff's physical impairments were inconsistent with the evidence based on normal testing. Inconsistency with the record was therefore a specific and legitimate reason, supported by substantial evidence, to discount their opinions.

With regard to Plaintiff's Autonomic Hypersensitivity diagnosis, Plaintiff only asserts generally that there is no reason to believe it is not the cause of her symptoms. However, the ALJ acknowledged this diagnosis in his discussion of the medical evidence. AR at 23. The ALJ did not find it to be a medically determinable impairment at Step Two and Plaintiff did not assign any error to that determination. Although Plaintiff suggests the Court should find a different interpretation of the medical evidence, the ALJ's interpretation is rational and therefore must be upheld. *Thomas*, 278 F.3d at 954.

Plaintiff also takes issue with the ALJ's finding that the normal testing had no explanation for Plaintiff's symptomatology and that various doctors suggested there is a possible significant psychological overlay and/or a possible somatic component to Plaintiff's complaints. Plaintiff asserts the ALJ impermissibly played doctor in interpreting the medical findings. However, the ALJ's summary of the medical evidence includes references to the disconnect between Plaintiff's physical symptom complaints and the objective testing that led doctors to suspect there might be psychological or somatic issues regarding her symptoms. The ALJ therefore did not substitute his own judgment in place of a doctor's opinions, rather, this idea originated from Plaintiff's doctors.

Even if the ALJ erred in discounting Drs. Munoz and Hsu's opinions based on the finding that there is no explanation for Plaintiff's symptomatology and that there might be a significant psychological overlay and/or a possible somatic component to Plaintiff's complaints, any error is

ORDER - 9

harmless given the other specific and legitimate reasons, supported by substantial evidence, that the ALJ provided for discounting the Drs. Munoz and Hsu's opinions. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (error harmless if "inconsequential to the ultimate disability determination").

### 3. Improvement

As noted above, the ALJ also found Drs. Munoz and Hsu's opinions were not in accord with Plaintiff's improvement in her syncope symptoms with vitamin B12 shots (AR at 717), improvement in her muscle spasms with valium (*id.* at 1879), and that her blood pressure responded to IV fluids (*id.* at 3775). Plaintiff argues the ALJ selected only a few isolated instances of improvement that did not account for Plaintiff's symptoms prior to 2015. (Dkt. # 13 at 3.)

The improvements referenced by the ALJ occurred in 2015, 2016, and 2017. Although the records are dated from 2015 and later, Plaintiff's improvements suggest that her conditions themselves were amendable to treatment and improved with medication. The record also suggests the treatments may have been ongoing and not as isolated as Plaintiff asserts. AR at 717 (Plaintiff continued to take B12 injections every four weeks); *id.* at 1879 (Plaintiff has regular fluid infusions scheduled); *id.* at 3775 (Plaintiff had frequent visits to the ER for fatigue and low blood pressure that almost always responded well to IV fluids). Impairments that can be "controlled effectively" by medication or treatment are not considered disabling for purposes of determining Social Security eligibility. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). While Plaintiff asserts she exhibited some symptoms of her impairments in 2015, the Court finds the ALJ's interpretation of the evidence rational and therefore affirms his findings. *Thomas*, 278 F.3d at 954. Accordingly, Plaintiff's improvement

ORDER - 10

with treatment was a specific and legitimate reason, supported by substantial evidence, for discounting Drs. Munoz and Hsu's opinions and the ALJ therefore did not err in assessing the medical opinion evidence.[3]

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 23rd day of July, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge

---

[3] Plaintiff requests this matter be remanded for an award of benefits. (Dkt. # 11 at 7.) Because the Court finds the ALJ did not err in evaluating the medical evidence, the Court need not address this argument.

ORDER - 11